# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| KIMBERLY S. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:16CV00014 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| MOUNTAIN STATES HEALTH | ) | By: James P. Jones |
| ALLIANCE, ET AL., | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Timothy W. McAfee, The McAfee Law Firm, Big Stone Gap, Virginia, for Plaintiff; Kimberly W. Daniel and Jonathan M. Sumrell, Hancock, Daniel & Johnson, P.C., Glen Allen, Virginia, for Defendants.*

The plaintiff claims that she was terminated from her job as a hospital admissions clerk because of her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). Following discovery, the defendants have jointly moved for summary judgment in their favor. In addition, they have filed a motion to strike a declaration of the plaintiff filed in opposition to summary judgment on the ground that it is inconsistent with her discovery deposition and interrogatory answers. I will grant the motion to strike and because I find that the facts show that the defendants are entitled to judgment as a matter of law, I will grant them summary judgment.[1]

---

[1] The plaintiff's Complaint can be liberally construed to assert three separate causes of action under the ADEA, namely (1) unlawful termination; (2) disparate

I.

The following facts are taken from the summary judgment record presented in the light most favorable to the plaintiff.

The plaintiff, Kimberly S. Moore, worked as an admissions clerk for Norton Community Hospital ("Hospital") since 1991. Her employment was terminated on June 6, 2014. At the time of her termination, she was fifty-four years old and had been employed by the Hospital for nearly twenty-three years.

Moore was covered by the terms of a collective bargaining agreement ("CBA") between the Hospital and a labor union. At some point, the Hospital became affiliated with Mountain States Health Alliance, which thereafter operated the Hospital pursuant to a management agreement.[2]

One of Moore's primary responsibilities as an admissions clerk was to interact with and register patients in a timely manner. All admissions clerks had the same essential job duties: register patients quickly, accurately and efficiently, and present the Hospital in a positive light while interacting with the public. They were also required to report any malfunctioning equipment.

---

treatment during her employment; and (3) a hostile work environment. At oral argument on the present motion, plaintiff's counsel disclaimed any ADEA cause of action except the one for her termination.

[2] Both the Hospital and Mountain States Health Alliance are defendants to this action. For the purposes of the present motions, the parties make no distinction between the two. For convenience, I will refer to the defendants together as the Hospital.

Over the years, Moore had been criticized by her supervisors for having an unprofessional attitude, and received written warnings for such conduct in 2006 and 2007.

From 2011 through November 2014, Timothy Cheek, the Hospital's Patient Access Manager, was Moore's manager, and Teresa Stough assisted in supervising Moore. During this period and throughout the remainder of her employment, Moore worked day shifts almost exclusively in the main Hospital Admissions Department.[3] Moore felt that other admissions department team members were given better shifts than her.

The computer system used by the admissions department changed in 2012. All admissions clerks, including Moore, were provided training on the new system. Moore also received individual training. Admissions clerks could request additional training as needed. Despite this training, Moore could not and did not use her Hospital email account. Important notices were often sent via email.

The Hospital disciplined Moore on multiple occasions in 2013 and 2014 for what the Hospital considered to be failures to behave professionally and appropriately. For example, it was reported by Ms. Stough on July 25, 2013, that Moore exhibited "unprofessional attitude with staff and management. Multiple

---

[3] Moore was temporarily assigned to the Hospital's outpatient surgery center in 2012 or 2013. This transfer was based on the Hospital's business needs and to ensure adequate coverage based on patient volumes.

complaints by pts and team member of unprofessionalism. Threatening other employees in regards to takeing [sic] shifts. Consistent crying and yelling over job duties that have been given to the team member." Mem. Supp. Mot. Summ. J. Ex. D, at 52, ECF No. 30-4. Moore personally rated herself as needing improvement in various aspects of her 2013 final performance evaluation.

A December 19, 2013, Team Member Counseling Report[4] advised that the next disciplinary infraction against Moore would result in her suspension. A month later, another Counseling Report was issued against Moore based on a patient complaint and she was suspended for three days. This decision was upheld by the Hospital's Chief Executive Officer, Mark Leonard, although he reduced her suspension to only one day. As part of her suspension, Moore was required to participate in the Hospital's Employee Assistance Program ("EAP").[5] At this time, Leonard specifically cautioned Moore that further misconduct would result in her termination. Moore testified in her deposition that she had no reason at that time to believe that CEO Leonard would act unfairly towards her or treat her worse than a younger person. Mem. Supp. Mot. Summ. J., Ex. D, Moore Dep. 106, ECF No. 30-4.

---

[4] A Team Member Counseling Report ("Counseling Report") is what the Hospital calls a written disciplinary warning or action. Once issued, it is signed by the employee involved in order to memorialize its receipt.

[5] Moore previously had been required to attend EAP sessions in October 2013.

A mandatory staff meeting was held in April 2014 during which all staff members were allowed to voice their concerns about Moore's behavior at work. Moore believes that she was unfairly subjected to criticism from her fellow employees during this meeting. She testified in her deposition that "I didn't do half of the things that they said I did." Mem. Supp. Mot. Summ. J., Ex. D, Moore Dep. 139, ECF No. 30-4.

Three subsequent incidents formed the basis for Moore's ultimate termination. On May 29, 2014, Moore registered a patient who had previously complained about her attitude back in 2012. This patient again complained about Moore, stating that Moore was "rude, obnoxious, and just a B****." Mem. Supp. Mot. Summ. J., Ex. C, Attach. 5, ECF No. 30-3. Shortly thereafter, on June 4, 2014, a Hospital contractor reported to Cheek that she had overheard Moore clearly saying "bullshit" in a hallway within earshot of patients and visitors, although Moore and another employee claimed that she had only said "bull." *Id.* Finally, on the same day, Cheek was informed that Moore had failed to report a broken scanner over the weekend. All admissions clerks, including Moore, had been informed in writing that they were required to report malfunctioning equipment. Instead of reporting the equipment as required, Moore simply placed the faulty scanner where she thought it would be noticed and planned to report it when she returned for her next shift. As a result of these three incidents, Cheek

issued a Counseling Report for a suspension of Moore with intent to terminate her, and on June 6, 2014, Leonard made the final decision to terminate Moore following a hearing.

At this time, vacant collective bargaining unit positions at the Hospital were filled according to the union CBA. The CBA required that vacant positions be filled by the most senior qualified employee who applied for and accepted the position.

Following Moore's termination, her vacant position was awarded according to the CBA. Initially it was awarded to Marla Dorton, the most senior employee who applied for and accepted the position. Ms. Dorton was sixty years old at that time. However, shortly after her trial period, Ms. Dorton decided that she did not wish to continue in the position. The next most senior employee who applied for and accepted the position was Courtney Mullins. Ms. Mullins was twenty-eight years old. She ultimately stayed in the position.

Moore filed a grievance pursuant to the CBA, but her union declined to proceed to arbitration of the grievance and thereafter Moore filed a charge of discrimination with the Equal Employment Opportunity Commission. This lawsuit followed, in which Moore claimed that she had been wrongfully terminated based upon her age and "because she had exercised her rights to file a grievance in accordance with her [union] contract." Compl. ¶ 29, ECF No. 1. On motion of the

defendants, I dismissed the claim of retaliation on the ground that Moore had failed to state sufficient facts supporting that claim. Op. & Order, Oct. 4, 2016, ECF No. 12.

## II. MOTION TO STRIKE.

In addition to their Motion for Summary Judgment, the defendants have jointly moved to strike a declaration submitted by the plaintiff on the ground that it impermissibly contradicts her sworn deposition testimony. The plaintiff has responded by filing a supplemental declaration in which she attempts to explain the inconsistencies, stating that she only remembered certain events after reviewing emails and other discovery materials produced by the defendants.

A party opposing a motion for summary judgment may raise issues of fact through affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). Such a declaration "must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). The Fourth Circuit has "consistently held that a party cannot create a triable issue in opposition to summary judgment simply by contradicting his deposition testimony with a subsequent affidavit." *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 438 (4th Cir. 1999). "At the summary judgment stage, if an affidavit is inconsistent with the affiant's prior deposition testimony, courts may disregard the affidavit pursuant to the sham-affidavit rule." *Kinser v. United Methodist Agency for the Retarded – W. N.C., Inc.*, 613 F. App'x 209, 210 (4th Cir. 2015)

(unpublished). The rule applies only where there is a "'bona fide inconsistency'" between the witness's deposition testimony and the statements in her affidavit or declaration. *Id.* at 210-11 (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 n.7 (4th Cir. 2001)). "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984).

I find that the declaration in question should be stricken. The plaintiff's declaration in opposition to summary judgment includes numerous statements that directly contradict her earlier interrogatory answers and deposition testimony. No satisfactory explanation has been given for these contradictions, and accordingly, it is proper to grant the defendants' motion under the sham-affidavit rule.

The defendants set forth in their briefs supporting their motion the numerous inconsistencies and contradictions submitted by the plaintiff. I will relate only some of the most egregious.

During her deposition, conducted on June 22, 2017, the plaintiff testified that her supervisor Cheek had "harassed me all the time," but the only example she could think of was that "several times" Cheek had said to her," "Be careful today, you are walking on a thin line." Rebuttal Mem. Supp. Defs.' Mot. Strike, Ex. E, Moore Dep. 153, ECF No. 60-5. Later in the deposition, she was asked "Did any

supervisor, Mr. Cheek or Ms. Stough, make a negative remark about your age that you heard or knew of?" *Id.* at 160. Moore related only that Cheek and Stough "had made remarks before that I made a lot more money than they did [and] . . . I had better insurance. I guess, because I have been here a long time." *Id.* at 161.

In comparison, in her later written declaration, the plaintiff asserted other specific instances of age-related comments. She declared that "Cheek claimed that [she] had mental problems and . . . needed to quit. He claimed that it was common for women my age to have mental issues." Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 1, Moore Decl. ¶ 19, ECF No. 52-1. The plaintiff also asserted that Cheek told her she was "too old to know how a mother feels." *Id.* at ¶ 24. Additionally she claimed that "[o]n one occasion . . . Cheek blasted [her] for not typing fast enough . . . [and] walked off and muttered 'old dogs new tricks,' and laughed." *Id.* at ¶ 18. Moore also asserted that Cheek "constantly commented to [her] that Admissions Clerks were the first face that patients would see, and that the hospital had a fresh new image to project, and [she] did not have the face they wanted." *Id.* at ¶ 21.

In addition, Moore was asked in her deposition when she had planned to retire and she replied, "I hadn't really thought about it. Maybe 65, 67." Rebuttal Mem. Supp. Defs.' Mot. Strike, Ex. E, Moore Dep. 169, ECF No. 60-5. In her later declaration, she asserted that "I was 10 months short of retiring." Pl.s' Mem. Opp'n Defs.' Mot. Summ. J., Ex. 1, Moore Decl. ¶ 6, ECF No. 52-1.

These efforts to revise Moore's deposition answers to better resist summary judgment are unavailing. Moore's case is not complicated and more than anyone she knew the facts on which her claim was based. While she was doubtless unsophisticated about the litigation process, she was represented by able and experienced counsel who certainly prepared her for her deposition. It would be unfair to the opposing parties and destructive of my duty to secure the just, speedy and inexpensive resolution of this case, *see* Fed. R. Civ. P. 1, if I did not grant the motion to strike Moore's declaration.

### III. MOTION FOR SUMMARY JUDGMENT.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To raise a genuine issue of material fact sufficient to avoid summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not a disfavored procedural shortcut, but an important mechanism for weeding out claims and defenses that have no factual basis. *Id*. at 327. It is the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment" based on the individual's age. 29 U.S.C. § 623(a)(1). To succeed on her claim of discriminatory discharge, the "plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). "The ADEA plaintiff may prove age discrimination in one of two ways: by proving a 'prima facie case' of age discrimination, which establishes a rebuttable presumption that the employer violated the ADEA; or by offering direct or circumstantial evidence of an employer's discriminatory animus." *Arthur v. Pet Dairy*, 593 F. App'x 211, 216 (4th Cir. 2015) (unpublished).

"To establish a prima facie case, the plaintiff must show (1) he was a member of the protected class, namely, 'individuals who are at least 40 years of

age,' 29 U.S.C. § 631(a); (2) he was performing his job duties to his employer's legitimate expectations at the time of termination; (3) he was terminated; and (4) he was replaced by a substantially younger individual." *Id.* at 216-17. The burden then "shifts to the employer to produce a legitimate, non-discriminatory reason for the termination." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513-14 (4th Cir. 2006). If the employer meets that burden of production, the initial presumption of discrimination disappears, and the plaintiff then bears the ultimate burden of proving that the employer's stated reason was pretextual and the real reason for the termination was discrimination. *Id.* at 514. Regarding the second element of the prima facie case, "whether an employee met his employer's legitimate expectations at the time of termination depends on the perception of the decision maker, not the self-assessment of the plaintiff." *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 469 (4th Cir. 2015) (unpublished) (internal quotation marks, alteration, and citation omitted).

While "[d]erogatory comments about an employee's age may be direct evidence of age discrimination, provided they concern the employee's age and sufficiently demonstrate that the employer's age-related animus affected the employment decision at issue," *Arthur*, 593 F. App'x at 218, no such comments are present in Moore's case. Moore testified in her deposition that while not disciplined over it, Cheek had complained of her speed in registering patients, in

comparison with other admission clerks, but Moore admitted that she did not usually meet the Hospital goal of registering patients within eight minutes, "I tried, but there was a lot to do." Mem. Supp. Mot. Summ. J., Ex. D, Moore Dep. 150, ECF No. 30-4. In addition, as earlier related, she testified that Cheek and Stough once told her that she made more money than they did and had better insurance because she had been employed longer than them. *Id*. at 161. None of these comments can be considered direct evidence of age discrimination.

In the absence of direct or circumstantial evidence of discriminatory animus, I agree with the defendants that Moore cannot establish a prima facie case of age discrimination. She has not shown that she can present evidence that she was meeting her employer's legitimate expectations at the time of her termination. The documented history of her disciplinary problems overcomes her own perceptions of her conduct. Moreover, she was not replaced by a younger person. In fact, the Hospital had no choice of her replacement, in light of the mandatory operation of the seniority system under the CBA.

Finally, even if she could show a prima facie case, the defendants have shown a legitimate, nondiscriminatory reason for her termination. She was warned by CEO Leonard — whom she absolves of any discriminatory animus — that any further infractions would result in termination. Moore admits that thereafter the Hospital did receive an additional complaint from a patient about her attitude and

from a coworker about her use of profanity in public, as well as admitting her failure to report broken equipment as required. *Id.* at 24, 143. While Moore disputes the patient's complaint and her use of profanity, she has not shown that these documented reasons for her termination are pretextual and her claim of discrimination must fail.[6] Accordingly, the defendants' Motion for Summary Judgment will be granted.[7]

III

For the foregoing reasons, it is **ORDERED** that Plaintiff's Motion to Strike Defense, ECF No. 61, is DENIED, and Defendants' Motion to Strike Plaintiff's Declaration, ECF No. 57, and Defendants' Motion for Summary Judgment, ECF No. 29, are GRANTED. A separate final judgment in favor of the defendants will be entered forthwith.

ENTER: March 12, 2018

/s/ James P. Jones
United States District Judge

---

[6] In addition, Moore admitted in her deposition that she does not believe that her age was the "but for" reason for her termination. She contended, as she did in her Complaint, that she was also fired in retaliation for filing of a union grievance. Rebuttal Mem. Supp. Defs.' Mot. Summ. J., Ex. D., Moore Dep. 118, ECF No. 56-4.

[7] The plaintiff also filed a Motion to Strike Defense, based upon alleged discovery violations by the defendants. The magistrate judge conducted a hearing on a related Motion for Sanctions filed by the plaintiff, and held that there was no basis for discovery sanctions against the defendants. Mem. Order, Feb. 28, 2018, ECF No. 76. I similarly find that the Motion to Strike Defense should be denied.